# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| VERNON COSEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 05-1402 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## O R D E R

This matter is now before the Court on Petitioner, Vernon Cosey's ("Cosey"), Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the § 2255 Motion [#1] is DENIED.

### BACKGROUND

In March 2000, Cosey and 14 other defendants were indicted on charges of multiple drug offenses and money laundering. Specifically, the Indictment charged Cosey with conspiracy to possess cocaine and cocaine base (crack) with the intent to distribute in violation of 21 U.S.C. § 846, distribution of more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a), possession with the intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a), possession with intent to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 841(a), and conspiracy to launder money in violation of 18 U.S.C. § 1956(h). On July 24, 2003, Cosey entered a guilty plea pursuant to a written plea agreement to the conspiracy charges in the United States District Court for the Central District of Illinois. On March 26, 2004, he was sentenced to two concurrent terms of 142 months' imprisonment, followed by a term of supervised release. The remaining counts of the Indictment were dismissed.

Although he waived his right to appeal and pursue collateral relief pursuant to § 2255 in ¶¶ 10 and 11 of the written plea agreement, Cosey attempted to pursue a direct appeal. On November 15, 2004, the Seventh Circuit dismissed the appeal as frivolous. Cosey has now filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. In his Motion, Cosey attempts to collaterally attack his conviction based on allegations that he received ineffective assistance of counsel and that his sentence is contrary to the decision in Booker v. United States. This Order follows.

## Discussion

A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." Guinan v. United States, 6 F.3d 468, 470 (7th Cir. 1993), *citing* Scott v. United States, 997 F.2d 340 (7th Cir. 1993). A § 2255 motion is not, however, a substitute for a direct appeal. Doe v. United States, 51 F.3d 693, 698 (7th Cir.), *cert. denied*, 116 S. Ct. 205 (1995).

Here, Cosey would appear to be barred from bringing this § 2255 motion by virtue of the fact that his plea agreement contains a waiver of his right to bring a collateral attack on his sentence. While Cosey does assert that he should be resentenced, he makes no attempt to avoid the impact of this waiver by asking the Court to vacate his guilty plea and does not present any evidence indicating that but for his counsel's ineffective assistance, he would not have entered into the plea agreement. Perhaps this is because he believes that the plea bargain's substantial advantages outweigh its disadvantages. In any event,

so long as the plea agreement stands, the waiver of the right to appeal or pursue collateral relief must generally be enforced. Id., *citing* United States v. Wagner, 103 F.3d 551 (7th Cir. 1996); Jones v. United States, 167 F.3d 1142, 1144 (7th Cir. 1999); United States v. Nelson, 124 F.3d 206, 1997 WL 374712, at *1 (7th Cir. July 1, 1997).

However, this circuit has recognized that the right to pursue a collateral attack pursuant to § 2255 survives "with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones, 167 F.3d at 1144-45. Accordingly, while Cosey does not specifically contend that he received ineffective assistance of counsel in connection with the negotiation of the waiver itself, the Court will address his claim to the extent necessary to determine whether the negotiation of the various waiver provisions is implicated.

The seminal case on ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that in order for a prisoner to demonstrate that counsel's performance fell below the constitutional standard, the petitioner would have to show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 690.

To satisfy Strickland's prejudice prong in this case, Petitioner must demonstrate through objective evidence a reasonable probability that, but for counsel's purportedly erroneous advice, he would not have entered the guilty plea and would have insisted upon

- 3 -

going to trial. United States v. Woolley, 123 F.3d 627, 635 (7th Cir. 1997). "It is far from obvious how a petitioner is expected to make such a showing, but it is clear that 'merely making such an allegation is insufficient.'" United States v. Ryan, 986 F.Supp. 509, 513 (N.D.Ill. 1997), *citing* Key, 806 F.2d at 139; *see also* McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996) (requiring that the petitioner establish through objective evidence that he would not have accepted the plea).

Here, Cosey asserts that counsel was ineffective because he erroneously informed him that his prior Georgia state conviction could not be used against him in sentencing because he was sentenced under a "first offender" provision of state law. There are no specific factual assertions or claims to the effect that Cosey's attorney rendered ineffective assistance in negotiating the waiver provision of his plea agreement. He does not argue that but for the purportedly misleading advice of counsel concerning the waiver, he would have rejected the plea offer and insisted on going to trial and does not ask to set aside his plea agreement.

Furthermore, a review of the transcript of the plea hearing reveals that, after a detailed discussion of the maximum sentence he could face depending on the nature of any past criminal conduct, Cosey received a lengthy explanation of the waiver provision and its consequences during the plea colloquy. As set forth below, this explanation was more than sufficient to remedy any misinformation (or lack of information) that may have been provided by his counsel with respect to the waiver provisions, and hence, he has failed to demonstrate actual prejudice under Strickland. This same dialogue also demonstrates the knowing and voluntary nature of Cosey's waiver and guilty plea, as well as his competency.

When the Court accepted Cosey's guilty plea, it held a lengthy change of plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Rule 11 "provides

protection for those who voluntarily choose to waive their constitutional right to a trial by pleading guilty while ensuring an adequate record to insulate the plea from appellate and collateral attacks." Key v. United States, 806 F.2d 133, 136 (7th Cir. 1986). Rule 11 also provides for a colloquy that "exposes the defendant's state of mind in the record through personal interrogation." Id., *citing* United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985). This aspect of the Rule 11 hearing is especially important with respect to subsequent collateral proceedings, because the representations made by the defendant during a plea colloquy, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Id., *citing* Thompson v. Wainwright, 787 F.2d 1447 (11th Cir. 1986); Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 (1977). Furthermore, "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 97 S.Ct. at 1629.

After a careful review of the transcript of Petitioner's Rule 11 hearing, the Court finds that he has failed to overcome the strong presumption of verity which attached to the statements of voluntariness and understanding that he made during that hearing. The pertinent portion of the record reveals the following colloquy between Baker and the Court after he was placed under oath:

> Q:   Now that you have been sworn, do you understand that your answers to my questions are subject to the penalties of perjury or of giving a false statement if you don't answer truthfully?
>
> A:   Yes.
>
> * * *
>
> Q:   Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?
>
> A:   No, sir.

- 5 -

Q: Are you currently under the influence of any drug, medication or alcoholic beverage of any kind?

A: No, sir.

\* \* \*

Q: As I understand it, your willingness to plead guilty here today is due, at least in part, to the discussions that you and your attorney have had with the attorney for the United States leading up to the discussion of this written plea agreement; is that correct?

A: Yes, sir.

Q: Did you have a reasonable opportunity to read and discuss the plea agreement with your attorney before you signed it?

A: Yes, sir.

Q: Does the plea agreement represent in its entirety every understanding that you have with the Government?

A: Yes, sir.

\* \* \*

Q: Beginning on page 5 and going into page 6 are two paragraphs dealing with waiver of rights. Paragraph 10 is a paragraph that waives your right to file a direct appeal to the Court of Appeals in Chicago after the sentence is imposed in this court. Otherwise a criminal defendant can within ten days within the time sentence is imposed file a notice of appeal to the Court of Appeals and claim that there was something unlawful or even constitutional about the process involved in the trial court or the sentence itself. That could even include a claim that the defendant's attorney had not effectively represented him. In this paragraph you're giving up almost all of your rights to file that kind of an appeal.

There are some very narrow exceptions. One mentioned in here is that if the Court were to impose a sentence that's beyond the statutory maximum provided by law, you could appeal that. The chances of the Court imposing such a sentence are virtually nonexistent, especially in this kind of case where in terms of the imprisonment component, for

        example, the statutory maximum is life anyway. Do you understand?

A:     Yes, I do.

Q:     So the chances of some issue coming up in that respect are very remote. The other item that you're reserving, which is not specifically referred to in here but is created by the cases, is that you are giving up the right in most respects to even claim that your attorney had not effectively represented you except that you reserve the claim to appeal on the grounds that your attorney did not effectively represent you regarding this plea agreement document itself. Do you understand that?

A:     Yes, sir.

Q:     So it's a very broad waiver. Any questions about the scope of that waiver?

A:     No, sir.

Q:     Then paragraph 11 is talking about waiving a different kind of proceeding. In addition to a direct appeal, a criminal defendant would otherwise have the right to come back into the trial court here where the sentence was imposed and file a proceeding normally in the nature of a petition for a writ of habeas corpus claiming, again, that there was something unlawful or unconstitutional about the process or the sentence itself and ask the Court to set aside what had happened. In this paragraph you're giving up the right to do that.

    So the bottom line practical effect of paragraphs 10 and 11 is that on the date you're sentenced, when you walk out of here, no matter how you may be satisfied with the sentence but even if you're very unsatisfied with the sentence, you would have almost no opportunity to challenge it. That would basically be the end of it. Do you understand the very broad scope of that?

A:     Yes, sir.

Q:     Any questions about that?

A:     No.

* * *

Q: Has anyone made any other or different promise or assurance of any kind to you in an effort to induce you to plead guilty here?

A: No.

Q: Has anyone attempted in any way to force you to plead guilty?

A: No.

Q: Are you pleading guilty of your own free will because you are guilty?

A: Yes, sir.

Q: Do you understand that the offenses to which you are pleading guilty are felony offenses? If your please are accepted, you will be adjudged guilty of those offenses?

A: Yes, sir.

* * *

Q: Pursuant to this plea agreement, you're giving up almost all of your right to appeal or collaterally attack your sentence, but do you understand you have very narrowly reserved some rights to appeal and the Government may have the right to appeal any sentence that I impose. Do you understand?

A: Yes, sir.

Q: Do you understand that by entering into this agreement and entering a plea of guilty, you will have waived or given up almost all of your right to appeal or collaterally attack any part of this sentence?

A: Yes, sir.

(Change of Plea Transcript at 3 -17.)

Cosey attempts to circumvent his waiver by arguing that his plea agreement was not voluntary because counsel gave him bad advice regarding the effect of a prior Georgia state conviction on his sentence. In order for this claim to succeed, he must establish that

counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of his probable sentence; he must also show that this deficient advice was a decisive factor in his decision to plead guilty. United States v. Cieslowski, 410 F.3d 353, 358-59 (7th Cir. 2005).

In opposition to Cosey's bald assertions regarding counsel's representations with respect to his Georgia state conviction, his counsel has submitted an affidavit that refutes Cosey's claim. Counsel's affidavit is supported by contemporaneous correspondence and other evidence of record. On May 9, 2003, counsel wrote to Cosey addressing possible calculations under the Sentencing Guidelines, noting "We are uncertain at this time as to what criminal history category would apply in your case because of the uncertainty of your criminal history points." The affidavit further indicates that counsel had discussed Cosey's criminal history with him on numerous occasions and was aware that Cosey had a 2002 Georgia state conviction for cruelty to children, simple battery, aggravated assault, terrorist threats, forgery, and giving a false name to a police officer. Counsel's uncertainty regarding Cosey's criminal history was also discussed during the plea colloquy, where counsel informed the Court that, "[W]e don't know his criminal history and that somewhat causes a problem, but he should fall into a range probably somewhere between 10 to 15 years . . . ." (Tr. at 15)

There is no indication that counsel failed to learn the facts of the case or that he failed to make a good faith estimate of the sentencing range. To the contrary, during the change of plea hearing, counsel stated and Cosey acknowledged that counsel's best estimate was "somewhere between 10 to 15 years," which is equivalent to 120 to 180 months. The 142 months that Cosey received at sentencing fell squarely within this range. Thus, contrary to Cosey's bald protestations, the record confirms that counsel not only

provided him with a good faith estimate of his sentencing range, but also that counsel's estimate proved to be quite accurate. Counsel's performance more than meets the standard of adequacy required under Cieslowski.

That leaves Cosey's self-serving assertion that he would not have pled guilty but for counsel's misrepresentations. Cosey's former counsel's affidavit notes Cosey's concerns about exposing himself to life in prison if he went to trial, with or without consideration of the Georgia state conviction, and that these concerns were substantially avoided by pleading guilty.

> Petitioner was fully advised by Affiant of the meaning and consequences which might flow to Petitioner from his guilty plea in the Georgia case, as well as all other cases known to Affiant which were in Petitioner's background. Petitioner was never advised by Affiant that his prior state Georgia conviction could not be used against him at his federal sentencing, as Affiant's Commentary confirms. To the contrary, Petitioner was fully informed of all parameters relating to his plea of guilty and subsequent sentencing issues, and consented to them.

Cosey's former counsel further states that under Illinois law, a guilty plea to a criminal charge that promises to be "erased" from the record if certain conditions are met still qualifies as a conviction for purposes of calculating criminal history in federal court. Cosey's former counsel then indicates under oath that if Cosey was concerned about his criminal history at sentencing, he never raised that issue with counsel and never indicated any desire to withdraw his guilty plea for this or any other reason.

The Court finds that nothing in the record even remotely suggests that Cosey did not knowingly and voluntarily enter the plea agreement, including the waiver provisions contained therein. To the contrary, it clearly indicates that he expressly indicated his intention to plead guilty and waived his rights to appeal or pursue collateral relief on more than one occasion after extensive questioning and explanation by the Court. The record

also demonstrates that the Court provided him with a lengthy and detailed explanation of his rights and the waiver provisions that was more than adequate to supplement or correct any lack of information or misinformation that may have been provided by counsel. After receiving this explanation, Cosey proceeded to state that he was acting voluntarily and understood everything as it had been explained to him by the Court.

Therefore, regardless of his current protestations that counsel was less than diligent in his representation and provided ineffective assistance, the record before the Court unequivocally demonstrates that Cosey acted knowingly and freely in entering into the plea agreement, including the waiver provisions. Had he truly not wished to plead guilty, not understood the proceedings in which he participated, or been caught unaware by the potential sentencing range or waiver provisions, it would seem only reasonable that he would have made some attempt to correct the factual record or bring his plight to the attention of the Court.

Cosey has failed to demonstrate that ineffective assistance of counsel negated the knowing or voluntary nature of his plea or the waiver itself, that the waiver was a product of coercion, or that the trial court relied on some constitutionally impermissible factor, such as race, in imposing sentence. Accordingly, the Court now holds that Cosey's guilty plea and waiver of his right to pursue collateral relief were both knowing and voluntary and operate to bar him from pursuing further habeas corpus relief. This § 2255 Motion is therefore frivolous. *See* United States v. Richardson, 1998 WL 388590, at *3 (E.D.La. July 9, 1998) (finding that defendant's claims under § 2255 that his plea was involuntary and that the government had not met its burden of proving he possessed crack cocaine were barred by a valid waiver in his plea agreement).

## CONCLUSION

For the reasons set forth herein, the Court cannot find that there has been any credible showing that but for the alleged unprofessional errors of counsel, there is any reasonable probability that the result of this proceeding would have been different, as the record clearly demonstrates that Cosey knowingly, intelligently, and voluntarily entered into his plea agreement and waived his right to bring both an appeal and collateral attack on his conviction and sentence. Accordingly, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [#1] is DISMISSED. This matter is now terminated.

ENTERED this 24th day of August, 2006.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge